■ DELORES A. MOORE, as Administratrix of the Estate of ROBERT C. SMITH, JR., Respondent, v CITY OF TROY, Appellant. —Mikoll, J.

Plaintiff was appointed administratrix of decedent's estate and brought the instant wrongful death action against defendant. After a trial the jury returned a verdict in favor of plaintiff, finding that defendant was negligent both in its supervision and attempted resuscitation of decedent, and awarded damages in the sum of $77,400. These appeals followed.

Supreme Court erred in denying defendant's motion made at the close of evidence to dismiss the complaint for failure to establish a prima facie case of negligence. Supreme Court had initially reserved decision on the motion but denied it in a letter decision disposing of all posttrial motions.

Decedent's unruly behavior on the morning in question cannot be viewed as a manifestation of suicidal tendencies, and plaintiff failed as a matter of law to establish a prima facie case of negligence against defendant in its supervision or attempted resuscitation of decedent (see, Gordon v City of New York, 70 NY2d 839). In Gordon v City of New York (supra, at 841), the Court of Appeals held that: "Whether a breach of duty has occurred depends upon whether the resulting harm was a reasonably foreseeable consequence of the defendant's acts or omissions * * *. If no inquiry could have been reasonably foreseen, or if defendant's conduct was reasonable in light of what could have been anticipated, there is no breach of duty, no negligence and no liability" (citations omitted). In the case at bar, plaintiff testified that decedent could not stand to be locked up, that she informed the police that he needed help, that he had been drinking and that she suspected that he might have taken some type of drug. She also stated, however, that decedent never threatened to harm himself, did not express any suicidal thoughts and that she did not request that he be hospitalized. Plaintiff also acknowledged that decedent had been locked up a number of times, including a few months before the date of his suicide. The proof was insufficient to establish that defendant knew or should have known that decedent would harm himself. Further, the record reveals that the police complied with all relevant regulations governing the procedures to be followed

prior to placing decedent in a jail cell. Decedent was found hanging only 11 minutes after being placed in the cell and his conduct, although noisy and boisterous, did not mandate that he be placed under constant supervision.

Plaintiff also failed to establish that defendant's resuscitation efforts were inadequate. The desk sergeant testified that he last heard decedent yelling from the cell over the intercom at approximately 4:54 A.M. or 4:55 A.M. and that he went to the cell within one minute of that time. By the time the EMTs arrived, decedent had been freed from the cell door and was being administered CPR by two police officers. The EMTs then took over the resuscitation and the ambulance arrived at 5:01 A.M. In light of the participants' testimony and the testimony of plaintiff's expert concerning the time it usually takes for someone to asphyxiate, the notation in the history portion of the hospital record that it took eight minutes from cardiac arrest to the initiation of CPR is not sufficient to create an issue of fact as to whether the EMTs' efforts at resuscitation were inadequate. Plaintiff's expert testified that the time of death from asphyxiation can vary widely and that, in his opinion, "if someone had a T-shirt knotted and tied around their neck with sufficient pressure to cut off all air", it might take "anything from five to ten minutes, eleven minutes". Significantly, one of the EMTs testified that, although the eight-minute entry was not made by him, he believed that it was intended to indicate the amount of time that they worked on decedent before transporting him to the hospital (shortly after arrival of the ambulance at 5:01 A.M.), not the time before resuscitation began. These time estimates by plaintiff's medical expert and the notation are not definite enough to materially change the facts established by the testimony of the EMTs and the police officers involved.

In view of our reversal and dismissal of the complaint because of plaintiff's failure to establish a prima facie case, it is unnecessary to address defendant's arguments that reversal is required because certain evidentiary rulings of Supreme Court deprived it of a fair trial or that the damages were excessive.

Yesawich Jr., Mercure, Mahoney and Harvey, JJ., concur. Ordered that the judgment and order are reversed, on the law, without costs, and complaint dismissed.