09-1745-cv
Mayo v. County of Albany

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 17th day of December, two thousand nine.

Present:
      JOSEPH M. McLAUGHLIN,
      ROBERT A. KATZMANN,
      GERARD E. LYNCH,
          *Circuit Judges*.

_____

KELLY ANN MAYO, an incapacitated person, by and through her father, JOSEPH F. MAYO, as the proposed special guardian of the person and property,

      *Plaintiffs-Appellants*,

         v.                            No. 09-1745-cv

COUNTY OF ALBANY and CORRECTIONAL MEDICAL SERVICES, INC.,

      *Defendants-Appellees*,

JAMES L. CAMPBELL, SHERIFF, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,

SHANNON MARSHALL, CORRECTION OFFICER, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, JILL HARRINGTON, R.N., IN HER INDIVIDUAL AND OFFICIAL CAPACITY, GLORIA COOPER, R.N., IN HER INDIVIDUAL AND OFFICIAL CAPACITY, MARY BRUNO, R.N., IN HER INDIVIDUAL AND OFFICIAL CAPACITY, CATHY PIENKOSKI, R.N., IN HER INDIVIDUAL AND OFFICIAL CAPACITY, TRISHA BECK, L.P.N., IN HER INDIVIDUAL AND OFFICIAL CAPACITY, JANE DOE, AN UNIDENTIFIED AGENT, SERVANT, AND/OR EMPLOYEE OF THE DEFENDANT, CORRECTIONAL MEDICAL SERVICES, INC. AND MICHAEL SALZMAN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,

     *Defendants.*

_____

| | |
|---|---|
| For Appellants: | JAMES E. MONROE, Dupée & Monroe, P.C., Goshen, N.Y. |
| For Appellee County of Albany: | SHAWN F. BROUSSEAU, Napierski, Vandenburgh & Napierski, L.L.P., Albany, N.Y. |
| For Appellee Correctional Medical Services, Inc.: | DEBRA J. YOUNG, Thuillez, Ford, Gold, Butler & Young, L.L.P., Albany, N.Y. |

Appeal from the United States District Court for the Northern District of New York (Sharpe, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiffs appeal from the district court's grant of summary judgment to the defendants on plaintiffs' claims for deliberate indifference pursuant to 42 U.S.C. § 1983, breach of contract and negligence under state law. We review the district court's judgment *de novo*. *See Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

2

As an initial matter, municipal liability against the County of Albany attaches only if Mayo can demonstrate a policy, custom or practice which deprived her of a federal or constitutional right. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Ciraolo v. City of New York*, 216 F.3d 236, 242 (2d Cir. 2000). We also note that the Eighth Amendment is not directly applicable to Mayo because she was a pretrial detainee. *See Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir. 1973) (overruled on other grounds). Constitutional claims by pretrial detainees must instead be analyzed under the Due Process Clause of the Fourteenth Amendment, which, in practice, involves the same test as that used to analyze claims by convicted inmates under the Eighth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Until recently, the applicable standard was objective, requiring a lower threshold of proof since it did not reach the defendant's state of mind. However, as this Court has recently noted in *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009), the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994), applied a subjective standard to Eighth Amendment deliberate indifference claims, requiring evidence that the defendant "disregard[ed] a risk of harm of which he [was] aware." *Caiozzo*, 581 F.3d at 65 (quoting *Farmer*, 511 U.S. at 837). This Court, in *Caiozzo*, resolved the ambiguity as to which test applies to Fourteenth Amendment deliberate indifference claims by determining that the standard was indeed subjective, thereby overruling *Liscio v. Warren*, 901 F.2d 274 (2d Cir. 1990), which had earlier applied the objective standard. *See Caiozzo*, 581 F.3d at 71. A plaintiff bringing a deliberate indifference claim must therefore demonstrate that the defendant deliberately disregarded knowledge of the harm he knew he could

3

cause as a result of his actions. *Id.*[1]

To substantiate a claim of deliberate indifference, the plaintiffs must establish two elements: that Mayo had a "serious medical condition" and that it was met with "deliberate indifference." *Id.* at 72 (internal quotation marks omitted). Thus, under *Farmer* (as applied to the case at bar), Mayo must show that defendants knew of and yet disregarded excessive risk to her health and safety, and that defendants were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference." *Farmer*, 511 U.S. at 837; *see also Caiozzo*, 581 F.3d at 72. Indeed, the standard requires a showing that defendants acted with "a state of mind that is the equivalent of criminal recklessness." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotation marks omitted).

To the extent that withdrawal from heroin and alcohol addictions presents a serious medical condition, it appears undisputed that Mayo satisfied the first prong of the test. Mayo's claim, however, founders on the second prong. We cannot conclude that the informed decisions to keep Mayo under active supervision, as opposed to constant supervision – a cumulative determination after no less than three evaluations[2] – was "deliberately indifferent." At each

---

[1] *Caiozzo* also reaffirmed the Court's position that "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo*, 581 F.3d at 72.

[2] Mayo was first evaluated upon arrest on May 13, 2006 and administered a Suicide Prevention Screening; she was again evaluated by a nurse, who identified heroin and alcohol addictions which prompted CMS's doctor to order treatments and medication to address eventual withdrawal symptoms; on the day of her suicide attempt, May 15, 2006, Mayo was evaluated a third time by the doctor after exhibiting withdrawal symptoms.

4

evaluation, the medical personnel making the assessment came to an informed conclusion that, despite some contraindications, Mayo was stable enough not to pose a suicide risk.

We decline plaintiffs' invitation to adopt a *per se* rule requiring constant supervision for inmate patients exhibiting symptoms of withdrawal from substance abuse in the absence of any supportive authority. Neither can we credit plaintiffs' contention that CMS failed to provide adequately tailored care to Mayo's specific needs because Mayo's course of treatment reflected adjustments in light of multiple evaluations and the "standing orders" in question were handwritten instructions specifically responsive to Mayo's case.

Plaintiffs' reliance on 9 N.Y.C.R.R. 7003.3(h) and the related Chairman's Memorandum No. 17-99 is misplaced because these provisions articulate an affirmative duty to determine whether an inmate requires additional supervision and to so provide only if it is determined necessary. The threshold determination of what level of supervision an inmate requires in light of his or her suicide risk remains, however, within the medical judgment of the prison medical staff.

In light of the foregoing, we find that defendants were not deliberately indifferent to Mayo's medical condition, either by policy or practice, or by the care administered to Mayo, and therefore we affirm the district court's grant of summary judgment to defendants on this claim.

In order to substantiate a claim of negligence, plaintiffs must establish: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of this duty; and (3) injury resulting from the breach of duty by the defendant. *See*, *e.g.*, *Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 333 (1981). The primary inquiry is whether the injury was a reasonably foreseeable consequence of the defendant's actions. *See Gordon v. City of New York*, 70 N.Y.2d 839, 841

(1987). Where prison staff "know[s] or should know that a prisoner has suicidal tendencies or that a prisoner might physically harm himself, a duty arises to provide reasonable care to assure that such harm does not occur." *Id.*

In light of the foregoing discussion, we cannot find that Mayo's suicide attempt was a reasonably foreseeable consequence of defendants' actions, and we accordingly cannot find that defendants were negligent. More specifically: (1) none of the evaluative tools employed indicated that Mayo posed a suicide risk;[3] (2) Mayo did not exhibit symptoms of withdrawal until the day of her attempt, which, in any event, prompted a third evaluation by a doctor; (3) in anticipation of withdrawal symptoms, Mayo was appropriately placed in a detox program; (4) Mayo did not exhibit any suicidal ideation in contemporaneous conversations with her boyfriend and father in the days leading to her attempt; and (5) there were no outward manifestations of potential suicide up through the last 10 minutes before her suicide attempt. Plaintiffs' only evidence suggesting negligence, the expert affidavit of Dr. William B. Head, Jr., is premised on the bare assumption, not founded in the evidence or supported by the expert's own analysis, that plaintiff was a suicide risk. This entirely conclusory assertion is insufficient to defeat summary judgment. Accordingly, though plaintiffs argue that the failure to provide constant supervision in light of Mayo's substance addictions constitutes negligence, we again decline to adopt the *per se* rule that plaintiffs advance and conclude that the district court did not err in granting summary judgment as to this count.

Finally, as to the breach of contract claim, under New York law, a plaintiff claiming

---

[3] The guidelines and protocols followed at the detention facility were approved by the National Commission on Correctional Health Care, which is understood to represent the applicable standard of care for inmates.

rights as a third-party beneficiary must demonstrate: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *State of California Pub. Employees Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (2000) (internal quotation marks omitted).

It is not disputed that a contract existed between the County of Albany and CMS for the latter to provide medical services to prisoners and pretrial detainees. Nor is it disputed that Mayo was the intended beneficiary of the contract. The main thrust of plaintiffs' argument is that defendants failed to provide the minimum standard of care as required by 9 N.Y.C.R.R. 7003.3(h) and the Chairman's Memorandum. Since the Court has already determined that defendants were neither deliberately indifferent nor negligent in the standard of care provided to Mayo, we accordingly cannot find that there was a breach of contract due to defendants' alleged failure to provide appropriate care for the reasons stated above.

Plaintiffs seek to lower the evidentiary bar required to substantiate their claims by relying on *Noseworthy v. City of New York*, 298 N.Y. 76 (1948). The *Noseworthy* doctrine's "sphere of operation is in the weight to be assigned to circumstantial evidence concerning disputed facts because the more direct and proper source of this evidence no longer exists." *Kazanoff v. United States*, 945 F.2d 32, 35 n.4 (2d Cir. 1991) (internal quotation marks omitted). The *Noseworthy* doctrine is inapplicable, however, because "this lesser degree of proof pertains to the weight which the circumstantial evidence may be afforded by the jury, not to the standard of proof the plaintiff must meet." *Holiday v. Huntington Hosp.*, 164 A.D.2d 424, 428 (N.Y. App. Div. 2d

Dept. 1990). Moreover, the primary rationale underlying the doctrine is not squarely presented here since Mayo herself would not, in any event, have been qualified to testify as to the medical adequacy of her treatment. At most, Mayo could have elucidated the exact events leading up to her suicide attempt, which stands independent of the central inquiry into the adequacy of the defendants' medical care during her detainment.

We have considered appellants' remaining arguments and find them to be without merit.

For the foregoing reasons, the Court **AFFIRMS** the district court's grant of summary judgment to the defendants.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

By:_____